Turner v. City of Indianapolis.

Filed May 29, 1884.

No. 9441.

TURNER v. CITY OF INDIANAPOLIS.

SUPERIOR COURT.—Appeal.—Estoppel.—Waiver.—From the action of the court in general term reversing the judgment at special term, and remanding the cause, a party prayed an appeal to the Supreme Court, but filed no bond. Afterwards he appeared at special term, where the mandate of the general term was executed by sustaining a demurrer to his complaint, and, declining to amend, he excepted. He then, within the time allowed by law, perfected his appeal to the Supreme Court from the judgment at general term by filing a transcript.

*Held*, that the action of the appellant at special term did not waive or estop the appeal prayed.

NEGLIGENCE.—*City.—Co-servants.*—The rule that a master is not liable to a servant for an injury resulting from the negligence of a fellow servant is not applicable to a suit against a municipal corporation.

SAME.—*Streets.*—A fireman, in assuming the duties of his place, takes upon himself no risk arising out of negligence on the part of those in charge of the streets.

SAME.—*Complaint.—Notice.*—In a complaint against a city for an injury caused by an obstruction in a street, it is not enough to allege that the city had negligently left the obstruction in the street, but it must also appear that it had notice of the obstruction, or that it ought to have had such notice.

From the Superior Court of Marion County.

*W. W. Herod* and *F. Winter*, for appellant.
*C. S. Denny* and *D. V. Burns*, for appellee.

FRANKLIN, C.—This case was tried in the special term of the superior court, which resulted in a judgment for the appellant. The case was appealed to the general term, and the judgment of the special term was reversed, for the reasons that the complaint was insufficient, and the evidence did not sustain the verdict of the jury. The cause was remanded to the special term with instructions for further proceedings in accordance with the opinion reversing the judgment. An appeal was prayed to the Supreme Court, but no bond was filed. This was on the 8th day of June, 1880.

On the 8th day of November, 1880, the parties appeared in special term, and, on the motion of appellee, in accordance with the opinion in general term, the demurrer to the complaint theretofore filed was by the court in special term sustained; appellant excepted. And on the 10th day of December, 1880, at the next term of the special term of said court, the parties again appeared, and the plaintiff declined to plead further, and elected to stand on the ruling to the demurrer heretofore made. Whereupon judgment was rendered upon the demurrer for the defendant for costs.

The plaintiff, instead of again appealing the case to the

general term, on the 12th day of May, 1881, filed a transcript of all said proceedings in this court, assigning as error thereon the reversal by the general term of the judgment first rendered by the special term.

Appellee objects to this court considering the case, and insists that the appeal ought to be dismissed. Upon the reversal of the judgment by the general term, the cause was regularly remanded to the special term, with instruction for further proceedings in accordance with the opinion. The plaintiff had choice of two proceedings, either to perfect his appeal to the Supreme Court, or go back to the special term for further proceedings. It is insisted that he elected to go back to the special term; and when he, without objection, voluntarily appeared at the subsequent special term, and the parties submitted the previous demurrer to the complaint to the court for decision, and the plaintiff excepted to the decision on the demurrer, and at a subsequent term of said special term again appeared in the case and declined to further plead, and, as the record shows, elected to stand on the ruling upon the demurrer, that he abandoned and waived his appeal to the Supreme Court, and elected to take his chances in further proceedings in the special term, and afterward was estopped from perfecting his said appeal to the Supreme Court; that the only way then to get into the Supreme Court was to again appeal to the general term, and through it come to the Supreme Court. And it is insisted by appellant that the statute gives him one year in which to perfect his appeal to the Supreme Court, and having given notice of his intention to do so, by praying an appeal at the time of the reversal of the judgment by the general term, no subsequent proceedings of the special term could cut off the right to perfect his appeal within the time given therefor by the statute.

Bigelow, in his work on estoppel, p. 562, lays down the rule to be, that "A party can not either in the course of litigation or in dealings *in pais* occupy inconsistent positions; and where one has an election between several inconsistent courses of ac-

tion he will be confined to that which he first adopts. Any decisive act of the party done with knowledge of his rights and of the facts determines his election and works an estoppel."

Upon the reversal of the judgment by the general term, the first decisive act done by the appellant in this case was to pray an appeal to the Supreme Court. After that he had one year to perfect such appeal in. When the case went back to the special term, had appellant amended his complaint, or done any other decisive act evincing an intention to further proceed with his case in the special term, it would have been construed as an abandonment of his appeal to the Supreme Court, and a waiver of his right to afterwards perfect such appeal. But the mere excepting to the action of the court, in carrying out the judgment of the general term, and his afterwards declining to further plead, and electing to stand upon his complaint, evinced rather an intention to prosecute his appeal to the Supreme Court than to abandon it. We do not think that the subsequent proceedings in the special term cut off appellant's right to perfect his appeal from the reversal of the judgment by the general term. The case is properly in this court for decision, and the appeal ought not to be dismissed.

The first question presented is as to the sufficiency of the complaint, which, in substance, alleges that on the 27th day of October, 1877, appellee was an incorporated city under the general law of the State of Indiana; that appellant was on said last mentioned date employed in the fire department of said city, and, under his employment, it was his duty to drive the chief engineer of the fire department to all fires as speedily as possible; that on said date above mentioned, while engaged in the line of his duty as aforesaid, in driving the chief engineer to a fire, and going at a rapid rate, as it was necessary and proper he should do, he drove upon and against a large rock which the said defendant had negligently suffered and permitted to be and remain in and upon the roadway of

Lafayette Railroad street, which was then and there a public street of said city, at and near the intersection of North street, and came violently into collision with said rock, by which the buggy in which plaintiff was seated was overturned, and plaintiff thrown therefrom to the ground with great force.

The complaint concludes with appropriate allegations as to the character of the injuries received and the damages sustained.

Appellee insists that the complaint is bad for the reason that appellant can not recover for injury caused by the negligence of the officers and agents of the city having supervision of her streets, because of the rule exempting a master from liability to a servant on account of the negligence of a co-servant.

While such a rule is admitted to exist, and doubtless ought to be applied to appropriate cases, we do not think that it can be correctly applied to the case under consideration. For negligently failing to keep a public street in repair or to remove obstructions therefrom, a city can not shield itself behind the negligence of its officers or agents whose special duty it might be to repair streets or remove obstructions. The State has delegated the power to and enjoined such duty upon the city as a corporation, and it must see that the duty is performed by its officers and agents.

Municipal corporations, as to the streets within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travellers, and are liable in a civil action for special injuries resulting from neglect to perform this duty. Dillon Mun. Corp., section 780; *City of Lafayette* v. *Larson,* 73 Ind. 367; *City of Crawfordsville* v. *Smith,* 79 Ind. 308 (41 Am. R. 612); *City of Logansport* v. *Dick,* 70 Ind. 65 (36 Am. R. 166); *Town of Elkhart* v. *Ritter,* 66 Ind. 136; *City of Indianapolis* v. *Gaston,* 58 Ind. 224; *Grove* v. *City of Fort Wayne,* 45 Ind. 429 (15 Am. R. 262); *Higert* v. *City of Greencastle,* 43 Ind. 574. In this class of cases, the negligence of the officer or agent becomes

the negligence of the city, the same as notice to the officer or agent is notice to the city.    It is through and by officers and agents that the corporation performs such duties.    Nor do we think that the rule applicable to  private corporations, such as railroads, etc., that the  master is not liable for injuries caused by the negligence of a co-servant, can be applied to officers and agents of municipal corporations.    If the rule in any case can be made applicable to such officers and agents, it can not be made to apply when they are acting in  entirely different  departments of  the  municipal  government.    We can not see wherein  there is any co-service to  be  performed between members of the fire department and members of the street department, to which the rule could be applied to the case under consideration.    A member of the fire department has no servitude connection whatever with the repairing of the streets, or the removal of obstructions therefrom, and we do not think he can in any sense be called a co-servant with the street commissioner or any other officer or agent of the city having charge of the streets.  They are to each other, in so far as servitude is concerned, entire strangers, and a fireman, in  assuming  the  duties of his  position, takes upon himself no risks arising out of the negligence of those in charge of the streets.

But we think the  question of co-servants is not properly raised by this demurrer.   The complaint charges that the defendant had negligently suffered and permitted the large rock to be and remain in and upon the roadway of the street, thus charging the negligence " directly upon the defendant itself, and not merely upon its employees."    And this has been held sufficient on demurrer.    See the case of  *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134), and the authorities therein cited.

A city may be held liable for  negligence, even at the suit of an employee.    *City of Lafayette* v. *Allen,* 81 Ind. 166. But while the  city may be made thus liable, the  complaint must state facts sufficient to show its liability.

This complaint does not charge the defendant with placing the obstruction in the street, but with negligently suffering and permitting it to be and remain there. This would be a sufficient charge of negligence against a private corporation, such as a railroad company, etc., for the obstruction of a public highway in the use of its franchise. But does the same rule obtain as to municipal corporations? While it may be difficult to give an entirely satisfactory reason for a difference, yet the authorities seem to make a difference, and it appears to be based upon the reason that municipal corporations act in behalf of the public, and, having no individual interest, such strict vigilance is not required. While private corporations acting for their own individual interest, by the permission of the public, are required to exercise a higher degree of vigilance, in order to protect the rights of the public.

Dillon on Municipal Corporations, sec. 790, says: "Where streets have been rendered unsafe by the direct act, order, or authority of the municipal corporation (not acting through independent contractors, the effect of which will be considered presently), no question has been made, or can reasonably exist, as to the liability of the corporation for injuries thus produced, where the person suffering them is without contributory fault, or was using due care. * * * * Where the duty to keep its streets in safe condition rests upon the corporation, it is liable for injuries caused by its neglect or omission to keep the streets in repair, as well as for those caused by defects occasioned by the wrongful acts of others, but as, in such case, the basis of the action is negligence, notice to the corporation of the defect which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it, is essential to liability." For, in such cases, "the corporation, in the absence of a controlling enactment, is responsible only for a reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known, or

ought to have been known to it, or to its officers having authority to act respecting it." See authorities cited in note 1 in support thereof.

From the great array of authorities above referred to in said note, there can be no doubt but the plaintiff, before he can recover in an action of this kind, must prove that the defendant had knowledge, notice, or that which is equivalent to notice, the continuance of the obstruction so long that it ought to have known of its existence, and had a reasonable time to remove the same. If notice is absolutely necessary to be proven in order to create a liability, why is it not necessary to be alleged in the complaint? This complaint alleges nothing of the kind, does not show how long the rock remained in the street before the accident, or that the defendant or any of its officers or agents had any knowledge or notice of its existence in the street.

In the case of *Worster* v. *Proprietors of Canal Bridge*, 16 Pick. 541, it was held by the court that the first count in the complaint was insufficient for the reason that it contained no averment that the defendant had reasonable notice of the defect of the bridge.

The case of *City of Fort Wayne* v. *DeWitt*, 47 Ind. 391, was a case for an injury received by falling into an excavation in a sidewalk as a part of a cellar excavated preparatory to the improvement of an adjacent lot. It was originally commenced against the owner of the lot and the city, and was afterwards dismissed as to the owner of the lot. The charge in the complaint was, that "on the — day of———, 1868, the said defendants negligently left said excavations in said sidewalk uncovered and without any guards or lights to prevent persons from falling into said excavations and into said cellar, while passing along said sidewalks; and the plaintiff," etc. The city was not charged with making the excavations, but negligently leaving them in the sidewalk uncovered and unprotected. And the following language is used in the opinion of the court: "In our opinion, the complaint

was fatally defective for failing to charge the appellant with negligence. * * * It is not alleged that the city or its officers had any notice of the condition of said excavations; nor are any facts stated from which notice might reasonably be inferred. There is no averment as to the length of time such excavations were left open and unprotected. For aught that appears in the complaint, it may have been only for a single hour or a day. In our opinion, the complaint should have alleged that the appellant had notice, or such facts should have been stated, from which notice might have been reasonably inferred." The complaint was held bad, and for this error the judgment was reversed.

The case under consideration more strongly requires the complaint to aver notice, or the statement of such facts from which notice could be reasonably inferred, than the case above referred to. The excavations would necessarily take some time to make them, and a better opportunity would be afforded the city to learn their true condition than would the momentarily dropping of a rock in the street. This may have been done on the same evening of the accident complained of, and but a few moments before its occurrence, without any opportunity whatever for the city or any of its officers to learn anything about its existence in the street.

Notwithstanding this court has held that a general charge of negligence in a railroad company is sufficient without averring notice, yet we think that in order to hold a municipal corporation liable for negligently failing to repair a street, or remove an obstruction therefrom, it must have notice of the want of repair or the existence of the obstruction, and it must either be averred in the complaint, or such facts stated from which it can be reasonably inferred.

The difference between a railroad company and a municipal corporation in this respect may be illustrated thus: Where a railroad track crosses a public street or highway, the railroad company, by some of its officers or employes, is presumed to be in continuous operation of business on

the track, and is at all times presumed to have, and is chargeable with, notice of any obstructions upon its track within the street or highway, and is required to keep the same clear save the necessary time for the transaction of its business. The city, by its officers or agents, are not hourly and daily traversing all its various public streets, and therefore is not presumed to have the same facilities for knowledge of obstructions in the streets, and is not chargeable with notice, until it has either been brought home to it, or a sufficient time has elapsed in which it should have learned the facts. *Dewey* v. *City of Detroit*, 15 Mich. 306.

All the cases referred to by appellant's counsel, in which the complaints have been held good without the averment of notice, are railroad cases, and we do not think that they are applicable to cases against municipal corporations, at least in this class of cases. While the want of notice appears to be a defence for a railroad company, and may be shown by the evidence, notice appears to be a necessary charge against a municipal corporation, and must be averred, or equivalent facts stated in the complaint, and proved upon the trial.

As the complaint must be held bad for the want of an averment of notice or its equivalent, it is unnecessary to investigate and decide the reasons for a new trial.

The judgment of the general term reversing the judgment of the special term ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the general term be and it is in all things affirmed, at the costs of appellant, and that the cause be remanded to the court below, with instructions for further proceedings in accordance with this opinion.

ELLIOTT, J., did not participate in the decision.

Filed Nov. 28, 1883.

## ON PETITION FOR A REHEARING.

FRANKLIN, C.—Appellant urges two reasons for a rehear-

ing. The first is that in the opinion deciding the case, this court places the affirmance of the judgment of the lower court at general term, reversing the judgment at special term, upon a different ground from the one upon which the court at general term reversed the judgment at special term. ·

We do not understand that the judgment, or the grounds upon which it is based, of the lower court in general term, become the law of the case so as to be binding upon this court in an appeal to this court from such judgment; if so, no such appeal would be provided for.

The second reason is that this court erred in holding that a general charge in the complaint of negligence in the defendant, without averring notice of the obstruction in the street, or alleging facts from which notice might be inferred, was insufficient; that the lower court in special term erred in overruling the demurrer to the complaint, and that there was no error in the reversal of the judgment at the general term.

For aught that appears in the complaint, the obstruction complained of may not have been in the street five minutes before the accident. And before the city can be held liable for not removing the obstruction from the street, it must be shown by averments in the complaint, that it had notice of the existence of the obstruction in the street, and that a reasonable time had elapsed, before the accident, for the removal of the same, or that it had remained there so long as to justify the presumption of such notice. This rule we think is based upon authority, and is in accordance with justice and common reason.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled, at appellant's costs.

Filed May 29, 1884.